CASE NO. 24-5783

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

Boone County Republican Party Executive Committee, et al.,

      *Plaintiffs-Appellants*,

    v.

H. David Wallace, et al.,

      *Defendants-Appellees.*

On Appeal from the United States District Court for the Eastern
District of Kentucky
Docket No. 3:24-cv-00049-GFVT

---

## BRIEF OF *AMICUS CURIAE*
## REPUBLICAN NATIONAL COMMITTEE
## IN SUPPORT OF PLAINTIFFS-APPELLANTS' PETITION FOR
## REHEARING *EN BANC*

---

Lee E. Goodman (DC 435493)
Michael A. Columbo (DC 476738)
Josiah Contarino (DC NY0612)
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700
lgoodman@dhillonlaw.com
mcolumbo@dhillonlaw.com
jcontarino@dhillonlaw.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

*Amicus Curiae* Republican National Committee states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT .......................................ii

TABLE OF CONTENTS.................................................... iii

TABLE OF AUTHORITIES ................................................iv

INTEREST OF *AMICUS CURIAE* ........................................ 1

INTRODUCTION ........................................................ 1

ERRORS IN THE PANEL OPINION ................................... 6

ARGUMENT ............................................................ 10

    I.   KREF Bans Political Speech by Party Committees. ............... 11

    II.  Strict Scrutiny Applies to KREF's Speech Prohibition. .......... 12

    III. KREF's Prohibition Fails to Satisfy Strict Scrutiny and is
           Therefore Unconstitutional....................................... 13

CONCLUSION ......................................................... 15

CERTIFICATE OF SERVICE............................................. 17

CERTIFICATE OF COMPLIANCE WITH FRAP 29 AND 32 .......... 17

# TABLE OF AUTHORITIES

## Cases

*Buckley v. Valeo,*
    424 U.S. 1 (1976)...................................................................... 13

*Carey v. FEC,*
    791 F. Supp. 2d 121 (D.D.C. 2011) ..................................... 10

*Citizens Against Rent Control v. Berkeley,*
    454 U.S. 290 (1981)........................................................ 10, 13

*Citizens United v. FEC,*
    558 U.S. 310 (2010).................................................... 9, 10, 12

*Colorado Republican Fed. Campaign Comm. v. FEC,*
    518 U.S. 604 (1996)........................................................ 10, 13

*Emily's List v. FEC,*
    581 F.3d 1 (D.C. Cir. 2009) ................................................ 10

*FEC v. Massachusetts Citizens for Life, Inc.,*
    479 U.S. 238 (1986)............................................................... 2

*FEC v. Ted Cruz for Senate,*
    596 U.S. 289 (2022)............................................................ 13

*First Nat'l Bank of Boston v. Bellotti,*
    435 U.S. 765 (1978).................................................... 10, 13, 14

*McCutcheon v. FEC,*
    572 U.S. 185 (2014)............................................................ 14

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015)............................................................ 12

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000)............................................................ 13

## Statutes

52 U.S.C. § 30101(14) ........................................................................ 1

KRS 121.005 ...................................................................................... 14

KRS 121.150(1) ................................................................................... 8

S. Rep. No. 689, 93d Cong., 2d Sess. (1974) .................................. 2

## Other Authorities

Daryl J. Levinson & Richard H. Pildes, *Separation of Parties, Not Powers*,
119 Harv. L. Rev. 2311 (2006) ...................................................... 2

## Regulations

32 KAR 1:050 ..................................................................................... 3

## INTEREST OF *AMICUS CURIAE*[1]

The Republican National Committee ("RNC") is the national organization of the Republican Party, representing Republican voters and candidates nationwide, as defined by 52 U.S.C. § 30101(14). The RNC helps Republican candidates achieve electoral victories at the local, state, and national levels. It engages in party-building activities; registers voters; gets out the vote; assists state and local parties; recruits, nominates, and supports candidates; holds conventions; adopts a national platform; supports voting rights and election integrity; and advocates for policies and issues aligned with the Republican Platform. The RNC raises and spends funds to support candidates and issues reflecting its core beliefs. Accordingly, the RNC has a strong interest in laws that affect party rights to advocate for candidates and issues.

## INTRODUCTION

Political parties promote both candidates and issues, including ballot measure issues, consistent with their adherents' political philosophies. Citizens thus associate through political parties to

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus or its counsel made a monetary contribution to its preparation or submission.

advance common political goals and rely upon the parties, like many other advocacy organizations, to use their contributed funds "in a manner that best serves the shared political purposes of the organization and contributor." *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 241, 260–61 (1986). When Congress adopted the Federal Election Campaign Act ("FECA"), it also recognized that a "crucial function" political parties serve in an election is to "publiciz[e] issues." S. Rep. No. 689, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 5587, 5594.

Indeed, issue advocacy by political parties dates to the earliest days of the republic. By 1790, Alexander Hamilton formed a congressional group to back his economic plan, prompting James Madison and Thomas Jefferson to organize the first opposition party. Daryl J. Levinson & Richard H. Pildes, *Separation of Parties, Not Powers*, 119 Harv. L. Rev. 2311, 2320 (2006). By 1796, Federalists and Republicans emerged as rival parties with leaders and state-level campaign machinery organizing "campaigns *focused more on issues* and platforms than on the local stature of the candidates." *Id.* (emphasis added).

Contrary to clear precedent, congressional findings, and a historical tradition of issue advocacy by political parties, the Kentucky Registry of Election Finance ("KREF") prohibits political parties from using their general treasury funds to advocate ballot measures. According to KREF: "[A] county executive committee [i.e., political party] may not use the funds that it raises for party nominees to support a constitutional amendment." KREF Adv. Op. 2024-02 at 3, R. 1-3, Page # 23. In KREF's arbitrary judgment, all party treasury funds must be used solely for candidate advocacy and, moreover, issue advocacy is not an activity "commensurate with the day-today [sic] operations of a political party." *Id*.

KREF roots the prohibition against issue advocacy by political parties not in any statute or policy articulated by the Kentucky legislature, but rather in a myopic reading of the agency's own regulatory definition of "executive committee," in 32 KAR 1:050, a term not defined by statute, which KREF now enforces as a substantive restriction on the permissible speech of such "executive committees." Section 1:050 defines a political party as an organization that "raises and spends funds to promote political party nominees, and performs

3

other activities commensurate with the day-to-day operation of a political party." KREF now argues that definitional provision limits the political subjects on which a party may spend its general treasury funds and imposes a substantive ban on issue speech. In effect, KREF has twisted a definition into an artificial ban on issue advocacy because the definition does not expressly mention support of issues as a legitimate object of party support.  The general treasury funds political parties raise from donors are not in fact limited solely to candidate advocacy, but KREF imposes such a restriction by operation of its regulation.

The KREF regulation prohibits a political party in Kentucky from using its general resources to publish the following political advertisement:



Appellants want to spend their general treasury funds to make direct expenditures to advocate for issues and candidates. Yet, KREF prohibits them from doing so. Not only is KREF prohibiting parties from advocating issues, but it also is prohibiting them from advocating for candidates by tying advocacy for candidates with advocacy for ballot

5

measures. KREF has conceded that Appellants can reference a candidate's support of an issue, PI Mot. Hrg. Tr., R. 25, Page # 236, but KREF prohibits Appellants from expressly advocating for or against an issue as part of its candidate advocacy.  For example, KREF would prohibit the following message: "Vote for Bob Smith because he supports Issue 2 and all voters should support Issue 2." *See id.*, R. 25, Page # 247–48. So the KREF prohibition censors speech about issues and candidates.

If left to stand, KREF's rule would mean that other speakers, including wealthy individuals and business corporations, have a First Amendment right to use their general treasury funds to engage in ballot measure advocacy, but political parties do not, which is wholly absurd.

## **ERRORS IN THE PANEL OPINION**

Over a persuasive dissent, the majority of the Sixth Circuit panel ("Panel") found KREF's prohibition constitutional under the faulty premise that, although the Appellant party committees could not advocate issues with existing funds, supporters of the parties could simply establish and register separate political issues committees, with

6

separate bank accounts, separate donors, and separate funds, to advocate for issues. Op. at 18. In other words, party leaders would be forced to create other organizations to engage in issue advocacy. Through this work around, the Panel reasoned, Appellants could effectively escape the prohibition by creating an alternative organization, which would be a mere registration and disclosure requirement.

But the Panel failed to address the prohibition against Appellants' right to speak in their own names with their existing funds. The requirement to establish separate political issues committees with separate donors and funds in order to speak only confirms the existence of the prohibition in the first instance. Further, the Panel failed to acknowledge that the new political issues committees would be separate and distinct associations. The Panel even endorsed KREF's view that parties cannot donate their general treasury funds to the separate political issue committees. Paradoxically, the Panel held that the only funds Appellants could donate to separate political issues committees would be "funds that they collected for the purpose of supporting or opposing the issue," Op. at 20–21, yet the Panel endorsed KREF's

7

representation that it would also be "improper" for Appellants to raise contributions earmarked for issue advocacy and donate them to political issues committees, Op. at 21; KRS 121.150(1).

Only by sidestepping the underlying prohibition, the Panel concluded it could apply the lower standard of "exacting scrutiny." Op. at 15. The Panel reasoned that financing speech through an alternative organization, a separate political issues committee with separate donors and funds, rather than the existing party committee with its donors and funds, ameliorated the prohibition. Op. at 26-27. This was clear error. A separately created entity—with a distinct name and organizational mission, separate solicitations and donors, a separate EIN and bank account, and separate funds—is not the same person or association as the party, and its speech is not the party's speech.

This error permeates the opinion's attempt to treat the party prohibition as a mere disclosure rule. The Panel posits the "central question . . . is whether the requirement that an executive committee register as a [political issues committee] . . . is a ban on [Appellants'] speech or a campaign finance disclosure requirement." Op. at 18. The Panel concluded KREF's rule constituted the latter because "once the

8

[political issues committees are] registered, [Appellants] may accept unlimited contributions, including from corporations, and make unlimited expenditures to support or oppose the contested issue." Op. at 19. But the executive committees (Appellants) *cannot* accept these funds—only the new and separate political issues committee can accept them.

Forcing a party committee to establish a separate entity and raise new donations does not cure the prohibition on the party's speech with existing funds. And it is foreclosed by *Citizens United v. FEC*, 558 U.S. 310, 337 (2010). There, the Supreme Court ruled unconstitutional a law that restricted a corporation's speech funded by its general treasury funds and ruled the government could not force the corporation to establish a separate entity, that raised separate funds, to conduct the speech in the corporation's place. *Id.*

In sum, the Panel erred by failing to address the prohibition against parties using their general treasury funds and by failing to apply strict scrutiny to a patent speech prohibition.[2]

---

[2] As Appellants argue, the out-of-circuit cases relied on by the Panel to deem KREF's prohibition a mere disclosure rule do not involve content- and spending-based prohibitions on an existing committee

9

## ARGUMENT

KREF's prohibition flagrantly violates the established First Amendment right of political parties to speak on candidates and issues. *See Citizens United*, 558 U.S. at 310 (government cannot prohibit independent expenditures for candidate advocacy); *Colorado Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 618 (1996) (government cannot prohibit political parties from making independent expenditures for candidate advocacy); *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 299 (1981) (government cannot limit contributions for ballot measure advocacy, as this "operate[s] as a direct restraint on freedom of expression of a group or committee desiring to engage in political dialogue"); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)

---

already registered with the state and, therefore, are distinguishable. Appellants' Pet. Br. at 17–18. Further, federal cases approving the use of separate candidate-advocacy *accounts* by a single organization are inapplicable here, because the separate *accounts* are necessary to segregate funds subject to strict amount and source restrictions in order to prevent *quid pro* corruption of candidates—a concern not present here. *See Emily's List v. FEC*, 581 F.3d 1, 16 (D.C. Cir. 2009); *Carey v. FEC*, 791 F. Supp. 2d 121, 132 (D.D.C. 2011). Moreover, those decisions confirm that an organization cannot be forced to establish a separate political committee.

(government cannot prohibit corporate expenditures for ballot measure advocacy).

## I.    KREF Bans Political Speech by Party Committees.

KREF's interpretation of "executive committee" prohibits parties from:

- spending their general funds on ballot measure advocacy. Compl., R. 1, Page ID # 7–8 (quoting Advisory Opinion); KREF Adv. Op., R. 1-3, Page # 22;

- contributing their general funds to a political issues (ballot measure) committee; Op. at 20–21; KRS 121.150(12);[3] and

- transferring their general treasury funds to any political issues committee, including one they establish. *See id.*

The Panel acknowledges that Appellants are "the governing bodies of the county [R]epublican parties," Op. at 17, and that "prohibiting the governing body of a political party from raising and

---

[3] The Panel repeats KREF's representation that Appellants can only contribute to a political issues committee the "funds that they collected for the purpose of supporting or opposing the issue," but not their general treasury funds. Op. at 20–21.

expending money concerning a state constitutional amendment is tantamount to prohibiting the party from doing the same," *id*. The inescapable reality is that KREF prohibits parties from spending their general treasury funds to speak on issues and candidates in connection with ballot measures, which is a fundamental purpose of their political association. Under settled principles, that amounts to a speech ban. *Citizens United*, 558 U.S. at 340.

## II.    Strict Scrutiny Applies to KREF's Speech Prohibition.

The KREF prohibition targets party committees, so it is a speaker-based restriction. And it targets issue speech, so it is a content-based restriction. Laws that prohibit political speech, especially by certain speakers or based on the content of speech, are subject to strict scrutiny. *Citizens United*, 558 U.S. at 340, 350 ("[T]he First Amendment generally prohibits the suppression of political speech based on the speaker's identity."); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (content-based laws are subject to strict scrutiny). Under strict scrutiny, the government must prove that a speech prohibition "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340 (cleaned up). In order for a law to be

12

narrowly tailored, it must use the least restrictive means available to achieve the government's objectives. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

Under strict scrutiny, laws that restrict political parties' spending on candidate advocacy violate the First Amendment. *Colorado Republican Fed.*, 518 U.S. at 618; *Buckley v. Valeo,* 424 U.S. 1, 36–37, 46–47, 78 (1976). Likewise, laws that restrict spending on ballot measures violate the First Amendment. *Bellotti*, 435 U.S. at 790–92.

## III.    KREF's Prohibition Fails to Satisfy Strict Scrutiny and is Therefore Unconstitutional.

KREF lacks a valid interest in barring parties from using general treasury funds for issue advocacy or contributing to political issues committees.  The Supreme Court invalidated similar restrictions in *Citizens Against Rent Control*, 454 U.S. at 298–99 (concerning committee ballot measure advocacy), and *Bellotti*, 435 U.S. 790–92 (concerning corporation ballot advocacy), precedents that foreclose KREF's action here.

The only recognized justification for campaign finance restrictions is preventing *quid pro quo* corruption of politicians. *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 305 (2022); *McCutcheon v. FEC*, 572 U.S. 185, 192

13

(2014). Neither the Kentucky legislature nor KREF has claimed the party prohibition serves an anti-corruption objective. Nor could they, since it is settled that anti-corruption is inapplicable to issue advocacy. *Bellotti*, 435 U.S. at 790.

Instead, KREF expresses concerns about protecting donors, explaining that donors might not foresee issue advocacy when donating to a party. *See* Op. at 20–21. But this ignores the well-understood purposes of political parties to advocate for candidates and issues as well as the commonly intertwined nature of candidate and issue advocacy. It is significant to the governmental interest inquiry that KREF conceived its regulatory definition of "executive committee" and has imposed it as a substantive ban on issue speech in the absence of any express statutory prohibition on party speech. Further, the Kentucky legislature's overarching concern was to promote transparency, not to restrict political parties' contributions to issue committees or protect party donors from unwittingly supporting specific issues when they provide support to a political party. *See* KRS 121.005.

Finally, KREF's prohibition against party spending on ballot measures is not the most narrowly tailored approach to its claimed

interest in promoting greater transparency and disclosure. Indeed, forcing parties to transfer their funds to a political issues committee, which would be one consequence of the prohibition the Panel considered, doesn't add any disclosure or otherwise promote transparency. Second, a prohibition is far more restrictive than, for example, simply requiring party committees to disclose their financial activity to a greater degree or with more frequency.

In sum, KREF's prohibition lacks a compelling state interest and is not the least restrictive means of advancing the disclosure interests posited by KREF. Therefore, the prohibition against party speech on issues violates the First Amendment.

## <u>CONCLUSION</u>

Because the Panel's decision conflicts with Supreme Court precedent and imposes a profound infringement on First Amendment rights, the Court should grant Appellants' petition for rehearing *en banc*.

<u>/s/ Josiah Contarino</u>
Lee E. Goodman (DC 435493)
Michael A. Columbo (DC 476738)
Josiah Contarino (DC NY0612)
DHILLON LAW GROUP INC.

15

2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700
lgoodman@dhillonlaw.com
mcolumbo@dhillonlaw.com
jcontarino@dhillonlaw.com

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon all counsel of record this 22 day of April 2025 via the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/Josiah Contarino*

## CERTIFICATE OF COMPLIANCE WITH FRAP 29 AND 32

This brief complies with the type-volume limitations of FRAP 29(b)(4) because it does not exceed 2,600 words (it is 2539 words), excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because the brief has been prepared in proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font.

*/s/Josiah Contarino*

17